# No. 23-50785

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ALEXANDER EMMANUEL RIOS,

*Defendant-Appellant.*

––––––––––––––––

Appeal from the United States District Court
for the Western District of Texas

––––––––––––––––

**Brief of Defendant-Appellant**

––––––––––––––––

MAUREEN SCOTT FRANCO
Federal Public Defender
Western District of Texas
300 Convent Street, Suite 2300
San Antonio, Texas 78205
Tel.: (210) 472-6700
Fax: (210) 472-4454

BRADFORD W. BOGAN
Assistant Federal Public Defender

*Attorney for Defendant-Appellant*

## Certificate of Interested Persons

### UNITED STATES v. ALEXANDER EMMANUEL RIOS, No. 23-50785

The undersigned counsel of record certifies that the persons having an interest in the outcome of this case are those listed below:

1. **Alexander Emmanuel Rios,** Defendant-Appellant;

2. **Jaime Esparza,** U.S. Attorney;

3. **John F. Bash** and **Ashley C. Hoff,** former U.S. Attorneys;

4. **William F. Calve** and **Joseph T. Lo Galbo,** Assistant U.S. Attorneys, who represented Plaintiff-Appellee in the district court;

5. **Maureen Scott Franco,** Federal Public Defender;

6. **Molly Lizbeth Roth,** Assistant Federal Public Defender, who represented Defendant-Appellant in the district court; and

7. **Bradford W. Bogan,** Assistant Federal Public Defender, who represents Defendant-Appellant in this Court.

This certificate is made so that the judges of this Court may evaluate possible disqualification or recusal.

s/ Bradford W. Bogan
BRADFORD W. BOGAN
*Attorney for Defendant-Appellant*

i

## Statement Regarding Oral Argument

Oral argument should not be necessary. Rios argues that 18 U.S.C. § 922(n)—which prohibits individuals under felony indictment from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce"—violates the Second Amendment under the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). This Court is considering this issue in two other fully briefed cases—including one that has been argued—that will likely control the outcome in this case. *See United States v. Quiroz*, No. 22-50834 (5th Cir.) (argued Feb. 8, 2023); *United States v. Sanchez-Tena*, No. 22-51078 (5th Cir.) (fully briefed).

# Table of Contents

Certificate of Interested Persons......................................................... i

Statement Regarding Oral Argument............................................... ii

Table of Authorities.......................................................................... iv

Subject Matter and Appellate Jurisdiction ...................................... 1

Issue Presented for Review ............................................................... 2

Statement of the Case........................................................................ 3

Summary of the Argument ................................................................ 7

Argument and Authorities................................................................. 8

    Rios's conviction should be reversed because 18 U.S.C.
    § 922(n) violates the Second Amendment................................. 8

    A. Standard of review. ................................................................. 8

    B. *Bruen* established a new two-step framework for
       analyzing Second Amendment challenges. ......................... 8

    C. Section 922(n) facially violates the Second Amendment
       under the *Bruen* framework. .................................................. 9

       1. The Second Amendment's plain text covers receipt of
          firearms by individuals under indictment.................... 10

       2. The Government cannot show that § 922(n) aligns
          with the country's historical tradition of firearm
          regulation......................................................................11

    D. At the very least, § 922(n) violates the Second
       Amendment as applied to Rios. .......................................... 19

Conclusion......................................................................................... 21

Certificate of Compliance with Type-Volume Limit...................... 22

# Table of Authorities

## Cases

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ................................................................. 10

*Freedom Path, Inc. v. IRS,*
  913 F.3d 503 (5th Cir. 2019) ...................................................... 9

*Nat'l Rifle Ass'n of America, Inc. v.*
  *Bureau of Alcohol, Tobacco, Firearms, and Explosives,*
  700 F.3d 185 (5th Cir. 2012) ...................................................... 16

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
  597 U.S. 1 (2022)................................................................*passim*

*United States v. Daniels,*
  77 F.4th 337 (5th Cir. 2023) ...............................................*passim*

*United States v. Quiroz,*
  No. 22-50834 (5th Cir.) ................................................................ ii

*United States v. Rahimi,*
  61 F.4th 443 (5th Cir. 2023) ...............................................*passim*

*United States v. Sanchez-Tena,*
  No. 22-51078 (5th Cir.) ............................................................... ii

*United States v. Simien,*
  655 F. Supp. 3d 540 (W.D. Tex. 2023)...........................5, 6, 10, 12

## Constitutional Provisions

U.S. Const. amend. II .................................................................. 10

## Statutes

18 U.S.C. § 922(g)(8) ............................................................. 10, 16

18 U.S.C. § 922(n) ................................................................*passim*

18 U.S.C. § 3142(c)(1) ........................................................... 19

18 U.S.C. § 3142(c)(1)(B)(viii) ............................................... 18

18 U.S.C. § 3231 ...................................................................... 1

18 U.S.C. § 3742(a) .................................................................. 1

28 U.S.C. § 1291 ...................................................................... 1

Acts and Laws of His Majesty's Province of New Hampshire
   in New England (1771) ................................................... 15

Bail Reform Act of 1984,
   Pub. L. No. 98-473, § 203(a), 98 Stat. 1837 ............... 18

Collection of All Such Acts of the General Assembly of Virginia.... 15

Federal Firearms Act of 1938,
   75 Cong. Ch. 850, § 2(e), 52 Stat. 1250 ...................... 12

Militia Act of 1662, 13 & 14 Car. 2., c.3, § 13 (1662) ..................... 15

**Rules**

Fed. R. App. P. 4(b) ................................................................. 1

Fed. R. App. P. 4(b)(1)(A)(i) .................................................. 1

Fed. R. App. P. 32(a)(5) ......................................................... 22

Fed. R. App. P. 32(a)(6) ......................................................... 22

Fed. R. App. P. 32(a)(7)(B) .................................................... 22

Fed. R. App. P. 32(f) .............................................................. 22

## Other Authorities

Greenlee, Joseph G.S.
*The Historical Justification for Prohibiting
Dangerous Persons from Possessing Arms,*
20 Wyo. L. Rev. 249, 275–83 (2020)........................................... 14

## Subject Matter and Appellate Jurisdiction

**1.  Subject Matter Jurisdiction in the District Court.** This
case arose from the prosecution of an alleged offense against the
laws of the United States. The district court had jurisdiction of this
case under 18 U.S.C. § 3231.

**2.  Jurisdiction in the Court of Appeals.** This is a direct ap-
peal from a final decision of the United States District Court for the
Western District of Texas entering a judgment of criminal convic-
tion and sentence. This Court has jurisdiction of the appeal under
18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

A criminal defendant who wishes to appeal a district court judg-
ment must file a notice of appeal in the district court within 14 days
after the judgment's entry. Fed. R. App. P. 4(b)(1)(A)(i). "A notice of
appeal filed after the court announces a decision, sentence, or or-
der—but before the entry of the judgment or order—is treated as
filed on the date of and after the entry." Fed. R. App. P. 4(b). Rios
was sentenced on November 1, 2023. ROA.13, 645. He filed a notice
of appeal on November 2, 2023. ROA.13, 630–32. The judgment was
entered on November 8, 2023. ROA.13.

## Issue Presented for Review

Does 18 U.S.C. § 922(n)—which prohibits individuals under felony indictment from receiving firearms—violate the Second Amendment either facially or as applied to Rios?

## Statement of the Case

Rios was convicted of receiving a firearm while under felony indictment, in violation of 18 U.S.C. § 922(n). He argues that the district court erred by denying his motion to dismiss the indictment because the statute is unconstitutional under the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).

**State Indictment, Arrest, and Federal Charge.** In January 2019, Rios pleaded guilty in state court to "False Alarm or Report." ROA.928. He was placed on deferred adjudication probation for three years. ROA.928. The state moved to adjudicate Rios's guilt and to revoke his probation in February 2019 and January 2020. ROA.928. Both times the state court continued Rios on probation with additional conditions. ROA.928.

In May 2020, Rios was arrested following a traffic stop of a vehicle in which he was a passenger. ROA.924. During a search of the vehicle, deputies found a bag in the back seat. ROA.924. Rios admitted that the bag belonged to him and consented to a search of it. ROA.924. Inside the bag was a variety of drugs (marijuana, THC oil, and methamphetamine and Ecstasy pills) and small plastic sandwich bags. ROA.924. Rios then fled on foot. ROA.924. A deputy

pursued Rios, tasered him, and took him into custody. ROA.924. Another deputy found two 9mm pistols in the vehicle: a Glock 26 underneath the driver's seat and a Glock 17 in the back seat. ROA.924. Rios admitted ownership of the Glock 17. ROA.924. He said he had purchased it at a house party he and the driver were attending before the traffic stop. ROA.924.

About a week later, in June 2020, the state again moved to adjudicate Rios's guilt and to revoke his probation in the false report case. ROA.928. In January 2021, the state court adjudicated Rios's guilt in the false report case, revoked his probation, and sentenced him to 8 months' and 7 days' state jail, with credit for 339 days' time served. ROA.929.

In the meantime, in September 2020—after the third motion to adjudicate the state charge, but before adjudication and revocation—Rios was indicted in federal court on one count of receiving a firearm (the Glock 17) while under felony indictment, in violation of 18 U.S.C. § 922(n). ROA.20.

**Motion to dismiss.** Rios moved to dismiss the indictment, arguing that § 922(n) violates the Second Amendment—both facially and as applied—under the framework set out by the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S.

1 (2022). ROA.142–55. *First*, Rios argued that the conduct prohibited by § 922(n)—receiving a firearm—was covered by the Second Amendment's plain text. ROA.145–49. *Second*, Rios argued that the Government could not show a historical tradition of similar gun regulations. ROA.149–54. In response, the Government claimed that the Second Amendment does not protect receiving a firearm, ROA.173–75, and argued that § 922(n) aligns with a "longstanding tradition of categorically restricting the gun rights of groups viewed by legislatures as unvirtuous or potentially dangerous," ROA.176–85.

The district court denied Rios's motion to dismiss, "find[ing] § 922(n) … constitutional, both facially and as applied to Rios." [1]ROA.598. The court relying on its earlier order addressing the same issue in a different case. ROA.598–600 (citing *United States v. Simien*, 655 F. Supp. 3d 540 (W.D. Tex. 2023)). In *Simien*, the same district court held that receipt of a firearm by someone under indictment was covered by the Second Amendment. 655 F. Supp. 3d

---

[1] The court denied relief on the as-applied challenge on the ground that Rios had not separately argued "why § 922(n) is unconstitutional as applied to him." ROA.598 n.1.

at 550–51. But the court concluded that early American surety statutes presented a "sufficient, though imperfect, historical analogue to § 922(n)." *Id.* at 551–52.

**Guilty plea.** Rios offered to enter a conditional guilty plea that would have reserved his right to appeal the denial of his motion to dismiss. ROA.614–18, 806–13. The Government refused to consent to a conditional plea, except as part of a plea agreement that would have included a waiver of Rios's right to appeal any other issues. ROA.806–13. Rios then pleaded guilty unconditionally, and without an agreement, to the indictment. ROA.645, 813–29.

**Sentencing.** The district court sentenced Rios to 27 months' imprisonment, to be followed by three years' supervised release. ROA.646–47.

**Appeal.** Rios appealed. ROA.630.

## Summary of the Argument

**Rios's conviction should be reversed because 18 U.S.C. § 922(n) violates the Second Amendment.**

Section 922(n) violates the Second Amendment under the *Bruen* framework. At the first step, the district court correctly held that receiving firearms is protected by the plain text of the Second Amendment. At the second step, the Government cannot show that the nation's historical tradition of firearm regulation supports limiting the Second Amendment rights of individuals under indictment. Thus, § 922(n) facially violates the Second Amendment. At the very least, it is unconstitutional as applied to Rios because he was under indictment for a nonviolent offense that did not involve guns.

## Argument and Authorities

## Rios's conviction should be reversed because 18 U.S.C. § 922(n) violates the Second Amendment.

Section 922(n) makes it illegal for "any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to … receive any firearm or ammunition." By doing so, the statute deprives many Americans who have only been *accused* of criminal conduct—and who are presumed innocent under a fundamental tenet of our criminal justice system—of their right to possess a gun for self-defense without historical precedent. The Court should hold that § 922(n) violates the Second Amendment facially or, at the very least, as applied to Rios.

### A. Standard of review.

The Court reviews constitutional challenges to a statute *de novo. See United States v. Daniels*, 77 F.4th 337, 341 (5th Cir. 2023), *petition for cert. filed* (U.S. Oct. 5, 2023) (No. 23-376); *United States v. Rahimi*, 61 F.4th 443, 450 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (U.S. June 30, 2023).

### B. *Bruen* established a new two-step framework for analyzing Second Amendment challenges.

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. The amendment codifies an

individual right to possess firearms for self-defense. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 8–10 (2022). In *Bruen*, the Supreme Court announced a new two-step framework for analyzing whether a statute violates the Second Amendment. *See United States v. Rahimi*, 61 F.4th 443, 450 (5th Cir. 2023) (recognizing that *Bruen* abrogated this Court's prior analysis), *cert. granted*, 143 S. Ct. 2688 (U.S. June 30, 2023). *First*, courts must ask whether the "Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 17. If so, the Constitution presumptively protects that conduct. *Id*. *Second*, the Government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Id*.

## C. Section 922(n) facially violates the Second Amendment under the *Bruen* framework.

A facial challenge to a statute "considers only the text of the statute itself, not its application to the particular circumstances of an individual." *Rahimi*, 61 F.4th at 453 (quoting *Freedom Path, Inc. v. IRS*, 913 F.3d 503, 508 (5th Cir. 2019)). In *Rahimi*, this Court held that another subsection of the statute at issue here—

§ 922(g)(8), which prohibits someone under a domestic violence restraining order from possessing firearms—is facially unconstitutional under the *Bruen* framework. *Id.* at 460–61. It should do the same with § 922(n) because the Second Amendment covers the conduct the statute regulates, and the Government cannot show a longstanding tradition disarming those under indictment.

## 1. The Second Amendment's plain text covers receipt of firearms by individuals under indictment.

At the first step of the *Bruen* analysis, the Second Amendment covers the conduct that § 922(n) regulates. As noted above, the Second Amendment protects the right "of the people to keep and bear Arms," U.S. Const. amend. II, which means possessing and carrying weapons for self-defense, *District of Columbia v. Heller*, 554 U.S. 570, 583–92 (2008). As the district court correctly explained, the conduct regulated by § 922(n)—*receiving* a gun—is covered by the plain text of the Second Amendment because "receipt is a necessary predicate to possession." *United States v. Simien*, 655 F. Supp. 3d 540, 551 (W.D. Tex. 2023).[2] Finally, "the people" referred to in the Second Amendment includes "all Americans," *Heller*, 554 U.S. at

---

[2] As noted above, the district court's order denying Rios's motion to dismiss relied on its earlier order in *Simien*. ROA.598–99. So when discussing the district court's reasoning, this brief cites *Simien*.

581, including those who have been indicted. Thus, the Constitution presumptively protects the conduct § 922(n) prohibits. *See Bruen*, 597 U.S. at 17.

## 2. The Government cannot show that § 922(n) aligns with the country's historical tradition of firearm regulation.

At the second step of the *Bruen* analysis, the Government cannot show that § 922(n) is "consistent with this Nation's historical tradition of firearm regulation." *See* 597 U.S. at 17. *Bruen* described three metrics for analyzing historical precedent: temporal proximity to the Founding era, "how and why" the regulations burden the right to armed self-defense, and breadth. *Id.* at 24–31. When a "challenged regulation addresses a general societal problem that has persisted since the 18th century"—like the purported problem of indictees receiving guns—"the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 26.

The federal law limiting the gun rights of individuals under indictment is of recent vintage. It was not until the 20th century that Congress made it "unlawful for any person who is under indictment

11

… to ship, transport, or cause to be shipped or transported in inter-state or foreign commerce any firearm or ammunition." Federal Firearms Act of 1938, 75 Cong. Ch. 850, § 2(e), 52 Stat. 1250. So the Government cited various other traditions below to try to justify § 922(n). ROA.176–85. And the district court relied on one of those traditions—early American surety statutes—to uphold § 922(n). *Simien*, 655 F. Supp. 3d at 551. But neither surety statutes nor any of the Government's other historical traditions justify § 922(n)'s intrusion on fundamental Second Amendment rights.

### a. Mid-19th century surety statutes were materially different than § 922(n).

The district court relied on surety statutes from the mid-19th century as a "sufficient, though imperfect, historical analogue to § 922(n)." *Simien*, 655 F. Supp. 3d at 551. But those statutes—which "required certain individuals to post bond before carrying weapons in public," *Bruen*, 597 U.S. at 55—are not at all similar to § 922(n).

*First*, the surety statutes differed dramatically from § 922(n) in "*how*" they burdened the right to bear arms. *See Bruen*, 597 U.S. at 29 (emphasis added). Those laws, unlike § 922(n), "did not prohibit public carry, much less possession"—or acquisition—"of weapons,

so long as the offender posted surety." *Rahimi*, 61 F.4th at 460. In other words, the "conditional" and "partial" gun restriction the surety statutes imposed could be overcome quite easily by posting a bond. *Id.* Not so with § 922(n), which is an absolute prohibition on receiving firearms while under indictment.

*Second*, although the surety laws required a "specific showing of reasonable cause to fear an injury, or breach of the peace," *Bruen*, 597 U.S. at 56, there is no similar requirement in § 922(n). So the surety laws "targeted only those threatening to do harm," *id.* at 55, but individuals under indictment are barred from obtaining firearms for self-defense whether they pose any threat or not.

*Finally*, the Supreme Court has cast doubt on relying on these surety statutes because there is little evidence that they were ever enforced—except pretextually against black defendants—making them "too slender a reed on which to hang a historical tradition." *Bruen*, 597 U.S. at 58.

In short, surety statutes do not support § 922(n). Indeed, because those statutes addressed a general societal problem through materially different means, they are evidence that § 922(n) is unconstitutional. *See Bruen*, 597 U.S. at 26–27.

### b. The purported tradition of disarming "dangerous" or "unvirtuous" people is overly broad and cannot justify § 922(n).

Along with citing surety statutes, the Government also cited a hodgepodge of laws that it claimed establish a tradition of "restricting the gun rights of citizens viewed by legislatures as unvirtuous or potentially dangerous." ROA.176–82. But this Court has foreclosed this argument, holding that analogizing to "a general notion of 'dangerousness'" is not enough. *Daniels*, 77 F.4th at 354. Indeed, such an argument has "no true limiting principle and would render the Second Amendment a dead letter." *Id.* at 353. So too with individuals the Government would deem "unvirtuous." This "virtuous citizen" theory lacks historical support. *See* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 275–83 (2020). And it is defined "far too broadly." *Bruen*, 597 U.S. at 31.

Rather than rely on vague notions of dangerousness or unvirtuousness, the Government must "analogize to particular regulatory traditions." *Daniels*, 77 F.4th at 354. But it cannot. None of the regulatory traditions the Government cobbled together to support its dangerousness theory is analogous to § 922(n).

14

**English Militia Act.** The first law the Government cited is the English Militia Act of 1662, which allowed the Crown to disarm those judged to be dangerous to the peace of the kingdom. ROA.176. But "the Militia Act was not incorporated into American law." *Daniels*, 77 F.4th at 351. So this law—which "was the justification for widespread disarming of political opponents," *id.* at 351–52—does not support § 922(n).

**"Going armed" laws.** The Government then cited four "going armed" laws—from the New Hampshire colony, Virginia, Massachusetts, and Tennessee—that prohibited bearing arms in a way that spreads fear or terror among the people. ROA.177.[3] Even if four laws could establish a tradition—which is unlikely, *see Bruen*, 597 U.S. at 46—these laws are not analogous to § 922(n). This Court has already explained "that it is doubtful these 'going armed' laws are reflective of our Nation's historical tradition of firearm regulation, at least as to forfeiture of firearms." *Rahimi*, 61 F.4th at 458. And these laws "only disarmed an offender after criminal proceedings and conviction." *Id*. In other words, they only disarmed those

---

[3] *See*, *e.g.*, Acts and Laws of His Majesty's Province of New Hampshire in New England 17 (1771) (statute enacted 1701); Collection of All Such Acts of the General Assembly of Virginia 33 (1794).

"who had been adjudicated to be a threat to society generally." *Id.* at 459. By contrast, § 922(n) disarms *all* indictees, whether judged as dangerous or not. And *how* the "going armed" laws restricted firearm use—criminalizing specific conduct with a firearm—is much different than § 922(n), which criminalizes mere receipt of guns by a category of people. In other words, § 922(n) "implicates a much wider swath of conduct." *See Rahimi*, 61 F.4th at 459. So, as with § 922(g)(8), these "going armed" laws "are not viable historical analogues for" § 922(n). *See id.*

**Laws disarming political dissidents.** Next, the Government noted that "several jurisdictions passed laws that confiscated weapons owned by persons who refused to swear an oath of allegiance to the state or to the nation." ROA.177 (quoting *Nat'l Rifle Ass'n of America, Inc. v.* Bureau *of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 200 (5th Cir. 2012)). Again, this Court has rejected those historical precedents as precursors to other subsections of § 922. "Founding-era governments did not disarm Loyalists because they were thought to lack self-control; it was because [they] were viewed as potential threats to the integrity of the state." *Daniels*, 77 F.4th at 351. So the reason for disarming political dissidents

is a far cry from the reason for disarming a person facing an indictment.

**Rejected state constitutional proposals.** The Government also relied on an amendment Samuel Adams proposed at the Massachusetts ratifying convention that would have limited the right to bear arms to "peaceable citizens" and a Pennsylvania proposal that would have protected the right to bear arms "unless for crimes committed, or real danger of public injury." ROA.178. As this Court explained in *Daniels*, these proposals "gave concrete language to possible limits on the right to bear arms," but "that language was not adopted." 77 F.4th at 352. Instead, the Second Amendment provides an "unqualified directive" that these rejected proposals cannot supplant. *Id.*

Thus, none of the regulatory traditions the Government cites as evidence that "dangerous" or "unvirtuous" people could be disarmed justify § 922(n).

### c. *Bruen*'s dicta on "shall-issue" licensing regimes does not support § 922(n).

The Government next claimed that *Bruen* "endorsed" "shall-issue" licensing regimes, which often disqualify individuals who have been indicted from obtaining guns. ROA.182–84. But *Bruen* did not

"rule out constitutional challenges to shall-issue regimes," 597 U.S. at 39 n.9, and its dicta can hardly be an endorsement of each component of those multifaceted laws. Indeed, this Court has rejected reliance on *Bruen*'s dicta about "shall-issue" licensing regimes to support another subsection of § 922, explaining that "the *Bruen* Court did not rule on the constitutionality of 43 specific state licensing regimes because that was not the issue before the Court." *Rahimi*, 61 F.4th at 451. These regimes likewise provide the Government little help here.

### d. Pretrial release conditions are not historical analogues for § 922(n).

Finally, the Government argued that pretrial release conditions are historical analogues § 922(n). ROA.184–85. In particular, the Government claimed that 18 U.S.C. § 3142(c)(1)(B)(viii)—which allows courts to impose a condition of pretrial release that a person "refrain from possessing a firearm"—"supplies a longstanding analogue to § 922(n)." ROA.184–85. That analogy fails for two reasons.

*First*, § 3142(c)(1)(B)(viii) is hardly "longstanding"—it was enacted in 1984. *See* Bail Reform Act of 1984, Pub. L. No. 98-473, § 203(a), 98 Stat. 1837. As *Bruen* explained, historical evidence that

long postdates the adoption of the Second Amendment is of limited value. 597 U.S. at 35–38.

*Second*, it differs in *how* it burdens the right to bear arms. Section § 3142(c)(1) requires a judicial determination that a condition restricting gun possession is among the "least restrictive" combination of conditions that will "reasonably assure … the safety of the community." By contrast, § 922(n) contains no procedural safeguards and requires no individualized finding that a particular indictee poses a risk to the public.

Thus, pretrial release conditions do not support finding § 922(n) constitutional.

*   *   *

The Government can show no historical evidence that illustrates a tradition like categorically disarming individuals under indictment. Thus, the Court should hold that § 922(n) facially violates the Second Amendment.

## D. At the very least, § 922(n) violates the Second Amendment as applied to Rios.

Even if this Court does not hold that § 922(n) is *facially* unconstitutional, it should hold that the statute violates the Second Amendment *as applied* to Rios under the same two-step *Bruen*

framework. *See generally Daniels*, 77 F.4th at 341–55 (*Bruen* framework applies to as-applied challenges).

As discussed above, Rios's conduct of receiving a firearm is protected by the Second Amendment at the first step of the *Bruen* analysis. And, at step two, there is no historical tradition of disarming a person under indictment. And that conclusion is even stronger here because the crime Rios was indicted for—making a false report about a crime—is a non-violent offense and so is far afield from the Government's "dangerousness" rationale and the capital crimes punishable by death that the Government relies on. *See* ROA.180–82. And the conduct Rios was charged with did not involve misusing or threating to misuse firearms, rendering the district court's analogy to surety statutes even less convincing in this context. Thus, the Court should at least find that § 922(n) is unconstitutional as applied to Rios.

## Conclusion

For these reasons, the Court should reverse the district court's denial of Rios's motion to dismiss and vacate his conviction.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender

s/ Bradford W. Bogan
BRADFORD W. BOGAN
Assistant Federal Public Defender
Western District of Texas
300 Convent Street, Suite 2300
San Antonio, Texas 7825
(210) 472-6700
(210) 472-4454 (Fax)
*Attorney for Defendant-Appellant*

**Certificate of Compliance with Type-Volume Limit**

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,636 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook in body text and 13-point in footnotes.

<u>s/ Bradford W. Bogan</u>
BRADFORD W. BOGAN
*Attorney for Defendant-Appellant*
Dated: April 1, 2024